UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:21-cr-254-FDW-DSC-1

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>MIGUEL ANGEL LOPEZ-RESENDIZ, )<br>)<br>Defendant. )<br>_____) | **ORDER** |

**THIS MATTER** is before the Court on Defendant's pro se Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Doc. 55].

**I.     BACKGROUND**

Defendant was charged with: distributing and possessing with intent to distribute 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) (Count One); distributing and possessing with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) (Count Two); possession with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) (Count Three); carrying a firearm during and in relation to, and possessing a firearm in furtherance of the drug trafficking offense charged in Count Three in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Four); possession with intent to distribute a mixture and substance containing a detectable amount of methamphetamine and a mixture and substance containing a detectable amount of marijuana and aiding and abetting the same in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), and (b)(1)(D)

1

(Count Five); possession of a firearm in furtherance of the drug trafficking crime charged in Count Five and aiding and abetting the same in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Six); and possession with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, and a mixture and substance containing a detectable amount of marijuana in violation of 21 U.S.C. ¶¶ 841(a)(1) and (b)(1)(A) (Count Seven). [Doc. 13 (Indictment)].

The Defendant pleaded guilty to Count Three, and admitted that he is guilty as charged of that offense, in exchange for the Government's dismissal of the remaining counts. [Doc. 23 at ¶¶ 1-2 (Plea Agreement)]. The Plea Agreement states that the offense charged in Count Three is punishable as follows:

> Possessing with Intent to Distribute 500 Grams or More of a Mixture and Substance Containing Methamphetamine, a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A); a minimum term of 10 years' imprisonment, and a maximum term of life imprisonment; a maximum fine of $10,000,000; and a minimum term of supervised release of five years, up to a maximum term of life.

[Id. at ¶ 5].

The parties agreed to jointly recommend with regards to drug amount that:

> The amount of methamphetamine (actual) that was known to or reasonably foreseeable by the defendant corresponds to either: (i) at least 1.5 kilograms but less than 4.5 kilograms; or (ii) 4.5 kilograms or more. Accordingly, the parties agree that the applicable corresponding Base Offense Level under U.S.S.G. § 2D1.1(a)(5) is either **38** or **36**. The parties may argue which of these two Base Offense Levels applies.

[Id. at ¶ 8]. The parties further agreed to jointly recommend that: a firearm was possessed pursuant to U.S.S.G. § 2D1.1(b)(1); parties reserved the right to argue their respective positions concerning the two-level specific offense characteristic for maintaining a premises under U.S.S.G. § 2D1.1(b)(12); the plea is timely for the purposes of acceptance of responsibility, if applicable; the

career offender or armed career criminal provisions will apply, if the Court determines that the Defendant qualifies for the same; the parties will not seek any other enhancements, adjustments, cross references, or reductions to the offense level; and the parties will recommend a sentence at the bottom of the applicable guidelines range and neither party will seek a departure or variance. [Id.].

The Plea Agreement further provides that: the Court would consider the advisory U.S. Sentencing Guidelines; the Court had not yet determined the sentence; any estimate of the likely sentence is a prediction rather than a promise; the Court would have the final discretion to impose any sentence up to the statutory maximum for each count; the Court would not be bound by the parties' recommendations or agreements; and Defendant would not be permitted to withdraw his plea as a result of the sentence imposed. [Id. at ¶ 7].

The Plea Agreement provides that there is a factual basis for the guilty plea, and that Defendant read and understood the written Factual Basis that was filed with the Plea Agreement, which may be used by the Court, U.S. Probation Office, and United States without objection for any purpose, including to determine the applicable advisory guideline range or the appropriate sentence. [Id. at ¶ 11]. The Plea Agreement further provides that the Factual Basis does not necessarily represent all of the conduct relevant to sentencing, and that the Government may submit a Statement of Relevant Conduct to the Probation Office and present the Court with additional relevant facts prior to or at sentencing. [Id. at ¶ 12].

The Plea Agreement sets forth the rights Defendant was waiving by pleading guilty, including the right: to withdraw the guilty plea once the Magistrate Judge has accepted it; to be tried by a jury; to be assisted by an attorney at trial; to confront and cross-examine witnesses; and not be compelled to incriminate himself. [Id. at ¶¶ 13-15]. The Plea Agreement acknowledges that

3

Defendant had discussed with defense counsel his post-conviction and appellate rights, and he expressly waived those rights except for claims of ineffective assistance of counsel or prosecutorial misconduct. [Id. at ¶¶ 16-17]. The Plea Agreement provides that "[t]here are no agreements, representations, or understandings between the parties in this case, other than those explicitly set forth in this Plea Agreement, or as noticed to the Court during the plea colloquy and contained in writing in a separate document signed by all parties." [Id. at ¶ 23].

The Factual Basis that was filed along with the Plea Agreement provides in relevant part:

> On or about September 23, 2021, in Mecklenburg County, … defendant **MIGUEL ANGEL LOPEZ-RESENDIZ ("LOPEZ-RESENDIZ")** knowingly and intentionally possessed with intent to distribute a controlled substance, which violation involved 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II Controlled substance.

[Doc. 24 at 1] (paragraph numbers omitted).

On June 10, 2022,[1] the Defendant filed a *pro se* Letter that was docketed as a Motion for Inquiry of Counsel. [Doc. 25]. In it, the Defendant requested a new lawyer because counsel was "not willing to help [him]," was trying to intimidate him into signing a plea, and "the only thing she does it's to try to force [him] to sign a plea that is way to high…." [Id. at 1] (errors uncorrected).

A Rule 11 hearing and the Motion for Inquiry of Counsel came before a magistrate judge on June 24, 2022. [Doc. 52]. A Spanish-language interpreter was sworn at the start of the hearing. [Id. at 2]. Counsel explained that the Defendant had agreed to sign the Plea Agreement after he had filed the Motion for Inquiry of Counsel. [Id.]. The magistrate judge questioned the Defendant about the Motion as follows:

> THE COURT: … Sir, I have a signed plea agreement that indicates you're pleading guilty to one of these charges. And then I also have the letter from you that says you want Ms. Richmond replaced as your attorney.

---

[1] The postmark date is used because the Defendant failed to certify the date upon which he placed the Letter in the prison mail system. See Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the prisoner mailbox rule).

4

> So my first question is: **Do you want to go ahead today with Ms. Richmond as your lawyer?**
>
> THE DEFENDANT: **Yes.**
>
> THE COURT: Then the next question is – your letter says something to the effect of you're being forced to plead guilty. And if you plead guilty, that has to be your will, your voluntary choice. And one of the questions I'll ask you, if we proceed with the plea, is: **Has anybody forced you, intimidated you, or coerced you into taking the plea?**
>
> Now, if I were to ask you that question now, what would your answer be?
>
> THE DEFENDANT: **No.**
>
> THE COURT: **Has anybody made you any promises other than what's in your plea agreement?**
>
> THE DEFENDANT: **No.**
>
> THE COURT: All right. We'll proceed then….

[Id. at 3] (emphasis added).

The Defendant stated under oath that he received a copy of the Indictment, discussed it with counsel, and understood the charge to which he was pleading guilty and his sentencing exposure of a minimum term of 10 years' imprisonment, a maximum of life, a maximum fine of $10 million, and a period of supervised release. [Id. at 5]. The Defendant agreed that: he understood that pleading guilty may cause him to be deprived of certain civil rights; he discussed with counsel how the sentencing guidelines may apply to his case; the Court would not be able to determine the sentence until a PSR has been prepared and Defendant has had an opportunity to comment on it; he may receive a sentence that is different from that called for by the guidelines; and he would have no right to withdraw the plea even if he receives a sentence more severe than he expects. [Id. at 6-7]. Defendant acknowledged the rights he was waiving by pleading guilty. [Id. at 7-8].

The Plea Agreement was summarized in open court. [Id. at 8-12]. Defendant confirmed that he understood and agreed with the terms of the Plea Agreement, including the waiver of his appellate and post-conviction rights. [Id. at 12]. Defendant stated that he read the Factual Basis, understood it, and agreed with it. [Id. at 12-13]. He admitted that he is guilty as charged in Count Three. [Id. at 8]. Defendant stated that nobody threatened, intimidated, or forced him to plead guilty, and that nobody made any promises of leniency or a light sentence to induce him to plead guilty. [Id. at 13]. Defendant agreed that he had enough time to discuss any possible defenses with his lawyer and was satisfied with counsel's services. [Id.].

The Presentence Investigation Report (PSR) scored the base offense level as 38 pursuant to U.S. Sentencing Guidelines § 2D1.1(a)(5) because the offense involved a minimum of 122,832.09 kilograms of converted drug weight. [Doc. 35 at ¶ 24]. Two-level enhancements were added because a firearm was possessed pursuant to U.S.S.G. § 2D1.1(b)(1), and because the Defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance. [Id. at ¶¶ 25-26]. This resulted in an offense level of 42. [Id. at ¶ 30]. Three levels were deducted for acceptance of responsibility, resulting in a total offense level of 39. [Id. at ¶¶ 32-34]. The Defendant had 0 criminal history points and a criminal history category of I. [Id. at ¶¶ 38-39]. This resulted in an advisory guideline range of 262 to 327 months' imprisonment. [Id. at ¶ 59]. The PSR notes that, absent the Plea Agreement, convictions as to Counts Four and Six would have each resulted in 60-month consecutive sentences. [Id. at ¶ 60].

A sentencing hearing came before the Court on December 14, 2022. [Doc. 48]. A Spanish-language interpreter was sworn at the start of the hearing. [Id. at 2]. The Defendant stated that he remembered answering a series of questions asked by a magistrate judge at the Rule 11 hearing, all of his answers to the questions were true and correct, and the Defendant would answer the

6

questions the same way if he were asked again. [Id. at 3]. He agreed that someone translated the Acceptance of Plea form for him, he reviewed it to ensure it was correctly filled out, and he signed it. [Id.]. The Defendant confirmed that he is, in fact guilty of "the federal felony of possession with intent to distribute 500 grams or more of methamphetamine, in violation of Title 21, U.S. Code, Sections 841(a)(1) and Section 841(b)(1)(A)." [Id. at 4].

The Defendant further admitted that someone translated the PSR for him, he understood it, he reviewed it with counsel, and counsel answered "any and all questions" he had about the PSR. [Id. at 6]. Defense counsel objected to the PSR's two-level enhancement for maintaining a premises for the purpose of controlled substances, and to the amount of drugs that was attributed to the Defendant because marijuana should not be considered as relevant conduct and because the "10 times" factor for actual methamphetamine should not be used. [Id. at 7-14, 45-50]. The Court overruled the objections. [Id. at 45, 50-51]. Counsel then requested a reduced sentence because inter alia the Defendant is a first-time offender and inept drug dealer:

> MS. RICHMOND: … Your Honor, I would also argue – I've had many drug cases in my career doing this work. And, you know, Mr. Lopez, you know, certainly is dealing in very high-level quantities of drugs, but he's a terrible drug dealer….
> You know, I've never seen a person who engaged in conduct that was so reckless without any care or thought to – I mean, most of my clients are the ones who are managing people like him because they use him as a stoolie or a patsy.
>
> And I – it's a little – again, there are certainly conduct he needs to be punished appropriately, but I do not see that 262 months is the appropriate sentence.

[Id. at 54-55]. A DEA special agent testified that law enforcement seized multiple kilos of methamphetamine, marijuana, an assault rifle loaded with a 100-round drum magazine, and an AR-15 magazine during the investigation into Defendant's illegal activities. [Id. at 20-22, 25, 35, 41]. The Government requested a sentence at the bottom of the advisory guideline range because *inter alia:* the Defendant's possession of an assault rifle loaded with 100-round drum magazine, a

7

"weapon of war," created a dangerous situation; his actions were not those of a "low-level drug dealer;" the offense is egregious; and the Plea Agreement was highly beneficial in that two § 924(c) charges were dropped. [Id. at 63-64]. The Court imposed a 262-month sentence at the bottom of the guidelines range, followed by five years of supervised release. [Id. at 70-71]. The Judgment was entered on December 20, 2022. [Doc. 39].

On direct appeal, counsel filed an Anders[2] brief conceding that there are no meritorious issues for appeal, but questioning whether Defendant's counsel provided ineffective assistance. The Defendant was notified of his right to file a pro se supplemental brief, but did not do so. The Fourth Circuit Court of Appeals affirmed because it did not conclusively appear on the record that the Defendant was provided ineffective assistance. United States v. Lopez-Resendiz, 2023 WL 8183309 (4th Cir. Nov. 27, 2023). The Defendant did not seek certiorari review.

The Defendant filed the instant § 2255 Motion to Vacate on June 24, 2024.[3] [Doc. 55]. He argues that counsel was ineffective for: (1) pressuring and intimidating him to plead guilty; (2) intimidating him to abandon his request for a new lawyer; (3) failing to give him a Spanish translation of the Plea Agreement and the PSR; (4) making prejudicial statements about him at the sentencing hearing; (5) failing to object to the prosecutor's incorrect and prejudicial statements at the detention and sentencing hearings; (6) failing to note that law enforcement seized cash that never appeared in the record; and (7) underestimating his expected sentence. [Doc. 55-1 at 4-13]. The Defendant asks the Court to appoint a lawyer to represent him and to grant his claims of ineffective assistance of counsel. [Id. at 14]. The Court does not require a response from the

---

[2] Anders v. California, 386 U.S. 738 (1967).

[3] Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the prisoner mailbox rule); Rule 3(d), 28 U.S.C. foll. § 2255 (addressing inmate filings).

Government in order to resolve this matter.

## II. SECTION 2255 STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the Defendant is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Defendant can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION[4]

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, a defendant must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's

---

[4] The Defendant's claims have been reorganized and restated in this section. Any argument or subclaim that is not specifically addressed has been considered and rejected.

representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). The Strickland standard is difficult to satisfy in that the "Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." See Yarborough v. Gentry, 540 U.S. 1, 8 (2003). The prejudice prong inquires into whether counsel's deficiency affected the judgment. See Strickland, 466 U.S. at 691. A defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. In considering the prejudice prong of the analysis, a court cannot grant relief solely because the outcome would have been different absent counsel's deficient performance, but rather, it "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, a defendant "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the defendant fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), *vacated on other grounds*, 218 F.3d 310 (4th Cir. 2000).

### A. Involuntary Plea

"[A] guilty plea constitutes a waiver of all nonjurisdictional defects, including the right to contest the factual merits of the charges." United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993). Thus, after a guilty plea, a defendant may not "raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Blackledge v. Perry, 417 U.S. 21, 29-30 (1974). Rather, he is limited "to attacks on the voluntary and intelligent nature of

10

the guilty plea, through proof that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases." Id.

The Defendant, who has a limited education, cannot read English, and was unfamiliar with the legal system, contends that counsel pressured him to plead guilty, intimidated him, told him that she could not give him more time, intimidated him into dropping his request for new counsel, failed to present him with a copy of the Plea Agreement that was translated into Spanish, told him that she would not help him if he went to trial, and prevented him from exercising his authority regarding whether to plead. [Doc. 55-1 at 6-7, 8]. He argues that the "implie[d]" lack of a Spanish Plea Agreement "raised the possibility that he did not understand the deal he was taking and the rights he was waiving," that counsel prevented him from going to trial as he wanted to do, and that he was unable to make a voluntary and intelligent choice about pleading guilty. [Id. at 4, 8-9].

The Defendant's present claims that counsel forced or coerced to plead guilty are conclusively refuted by the record. The Defendant stated under oath with the assistance of a Spanish interpreter that: he wanted to proceed with counsel as his lawyer; he understood the charge to which he was pleading guilty; he is guilty of that offense; he understood the Plea Agreement and the rights he was waiving by pleading guilty, including the appellate and post-conviction waivers; he had enough time to consult with counsel; he discussed possible defenses with counsel; he was satisfied with counsel's services; he understood that he could receive a sentence up to the statutory maximum and any estimate by counsel is not binding; he would not be allowed to withdraw his plea if he received a higher sentence than anticipated; and nobody threatened him, coerced him, or promised him leniency in exchange for his plea. His present vague, conclusory, and unsupported contentions to the contrary are rejected. See Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The

subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); see, e.g., United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005) ("[A]llegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'").

Moreover, Defendant has failed to demonstrate prejudice because it would not have been objectively reasonable to proceed to trial in the circumstances of this case. The Plea Agreement was extremely favorable in that it led to the dismissal of six serious charges, including two § 924(c) violations which each would have carried a mandatory consecutive sentence; he received a three-level reduction in the offense level for acceptance of responsibility; and the Government agreed not to oppose a sentence at the bottom of the guideline range. There was strong evidence of Defendant's guilt as outlined in the Factual Basis and acknowledged by Defendant in open court. It would not have been objectively reasonable, under these circumstances, for the Defendant to have proceeded to trial. See generally United States v. Santiago, 632 F. App'x 769, 774 (4th Cir. 2015) ("when the Government's case is strong," a § 2255 petitioner "faces a nearly insurmountable obstacle to showing that it would have been rational to go to trial."); Fugit, 703 F.3d at 259 (finding that the decision to go to trial would not have been objectively reasonable where the evidence of petitioner's guilt was overwhelming).

The Defendant's claims that counsel's ineffective assistance rendered the guilty plea involuntary are, therefore, dismissed and denied.

### B. Waiver

Where a defendant enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was "within the range of competence demanded by attorneys

12

in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). To satisfy Strickland's prejudice prong, the defendant must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. To meet this requirement, a defendant must establish "both subjectively that he would have gone to trial and that it would have been objectively reasonable to do so." United States v. Santiago, 632 F. App'x 769, 773 (4th Cir. 2015) (emphasis in original) (citing United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012)).

The Defendant contends that counsel was ineffective prior to the entry of the guilty plea by, e.g., failing to mention cash that went missing during the investigation which suggested misconduct if true, and failing to object to the prosecutor's prejudicial comments at the detention hearing. [See Doc. 55-1 at 9, 11]. They vague and conclusory were awaived by the Defendant's knowing and voluntary guilty plea. See Fed. R. Crim. P. 11(b)(1)-(3); United States v. DeFusco, 949 F.2d 114, 116 (4th Cir. 1991); see also United States v. Dyess, 730 F.3d 354, 359 (4th Cir. 2013) (vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the district court). Defendant's claims of pre-plea ineffective assistance are, therefore, dismissed and denied.

### C. Sentencing

When an ineffective assistance claim relates to a sentencing issue, a petitioner must demonstrate a "reasonable probability that his sentence would have been more lenient" but for counsel's error. Royal v. Taylor, 188 F.3d 239, 249 (4th Cir. 1999) (internal quotation omitted). When applying the Strickland prejudice test in the context of sentencing, "any amount of actual jail time has Sixth Amendment significance." Glover v. United States, 531 U.S. 198, 203 (4th Cir. 2001).

13

Case 3:21-cr-00254-FDW-DSC   Document 57   Filed 07/10/24   Page 13 of 16

The Defendant contends that counsel: did not provide him with a Spanish translation of the PSR; made prejudicial statements about him, e.g., that he is reckless, a "terrible drug dealer," and is a "stoolie" or "patsy" for higher-level dealers; failed to object to the prosecutor's incorrect and prejudicial statements about his "assault rifle loaded with a drum magazine capable of holding at least 100 rounds of ammunition," a "weapon of mass-destruction;" allowing him to be sentenced for methamphetamine actual rather than a mixture and failing to secure a lower sentence; and predicted that he would receive a 168-month sentence. [Doc. 55-1 at 4, 9-13].

The Defendant's contention that counsel failed to provide him with a PSR that he could understand is conclusively refuted by the record. He stated at the sentencing hearing that someone had translated the PSR for him, he understood it, he had reviewed it with counsel, and counsel answered "any and all questions." [Doc. 48 at 6]; see generally Blackledge, 431 U.S. at 74. His contention that counsel made prejudicial disparaging comments about him is rejected because these arguments were made in support of counsel's argument that the Defendant was a low-level mule who should receive a reduced sentence. His contention that counsel should have objected to the prosecutor's incorrect and prejudicial statements about an assault rifle is rejected because those arguments fairly commented on evidence presented by a special agent regarding the weapons that were seized during the investigation. See generally United States v. Littlejohn, 802 F.App'x 760, 764-65 (4th Cir. 2020) (arguments that fairly comment on the evidence are not improper). Nor can counsel be deemed ineffective for failing to make an argument contrary to the Defendant's concession in the Plea Agreement that the two-level enhancement for possessing a firearm applies. [Doc. 23 at ¶ 8]. The Defendant's contention that counsel allowed him to be sentenced for an inflated amount of methamphetamine actual is conclusively refuted by the record in that counsel objected to the drug amount and the methamphetamine actual calculation. Counsel was not

14

ineffective for making an argument that would have contradicted the Defendant's concession in the Plea Agreement that he was responsible for at least 1.5 kilograms but less than 4.5 kilograms, or 4.5 kilograms or more of methamphetamine actual, with an offense level of 36 or 38. [See Doc. 23 at ¶ 8]. The Defendant's additional sentencing arguments, e.g., referring to the safety valve and other matters, are rejected as vague and conclusory and, in any event, the Defendant's knowing and voluntary plea prevented counsel from seeking any other enhancements, adjustments, cross references, or reductions to the offense level that were not specifically set out in the Plea Agreement. [See id.]; Dyess, 730 F.3d at 359. Moreover, the Defendant has failed to demonstrate prejudice because he does not explain what more reasonable counsel could have done that had a reasonable probability of resulting in a lower sentence. See Dyess, 730 F.3d at 359; see Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) ("this Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success.").

The Defendant's claims of ineffective assistance with regards to sentencing are vague and conclusory, refuted by the record, and meritless. Accordingly, they are dismissed and denied.

**D. Appointment of Counsel**

There is no constitutional right to the appointment of counsel in a § 2255 proceeding. Pennsylvania v. Finley, 481 U.S. 551, 555 (1987). In § 2255 actions, appointment of counsel is governed by the Rules Governing § 2255 Proceedings, Rules 6(a) and 8(c), which mandate the appointment of counsel where discovery is necessary or if the matter proceeds to an evidentiary hearing. The Court may appoint counsel to a financially eligible habeas petitioner if justice so requires. See 18 U.S.C. § 3006A(a)(2)(B).

Here, the Defendant asks the Court to appoint counsel to represent him in this proceeding because he is "a Pro-se inmate and he don't know nothing about the law." [Doc. 55-1 at 14] (errors

15

uncorrected). The Defendant has failed to establish that the appointment of counsel is warranted and, accordingly, it his request will be denied.

## IV. CONCLUSION

For the foregoing reasons, the Motion to Vacate is dismissed and denied.

**IT IS, THEREFORE, ORDERED** that:

1. The Motion to Vacate [Doc. 55] is **DISMISSED AND DENIED.**

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a Defendant must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a Defendant must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

**IT IS SO ORDERED**.

Signed: July 10, 2024

Frank D. Whitney
United States District Judge